**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**BILLY MITCHELL**                                                                                                       **PLAINTIFF**

**V.                                   CASE NO.: 2:11CV00171 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                                           DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Billy Mitchell appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").[1] For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      Background**

On September 29, 2010, Mr. Mitchell filed for DIB, alleging disability beginning on September 24, 2010, due to bipolar disorder, major depressive episodes with hypomanic episodes, and intermittent explosive disorder.[2] (Tr. 78-80, 84, 92)  Mr. Mitchell's claims were denied initially and upon reconsideration. At his request, an Administrative Law Judge[3] ("ALJ") held a hearing on May 24, 2011, at which Mr.

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (#4)

[2] Mr. Mitchell claimed he became unable to work on September 24, 2010. (Tr. 78) He also stated a disability onset date of October 2, 2010. (Tr. 84) Mr. Mitchell stopped working on October 8, 2010, when he was fired due to a previous felony charge or conviction. (Tr. 84)

[3] The Honorable W. Thomas Bundy.

Mitchell appeared with his attorney. (Tr. 26) At the hearing, the ALJ heard testimony from Mr. Mitchell and a vocational expert ("VE"). (Tr. 26-36)

The ALJ issued a decision on June 7, 2011, finding that Mr. Mitchell was not disabled under the Act. (Tr. 11-18) On September 12, 2011, the Appeals Council denied Mr. Mitchell's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-5)

Mr. Mitchell was thirty-five years old at the time of the hearing. (Tr. 17) He had a high school education and past relevant work as a truck driver and assembler. (Tr. 17, 85-86) Mr. Mitchell was married and lived with his wife and four of his children. (Tr. 30) At the time of the hearing, Mr. Mitchell was on probation for the felony offenses of battery and strangulation. (Tr. 29)

Mr. Mitchell testified that he could drive, but did not drive often. (Tr. 31) He occasionally watched television, but mostly slept. (Tr. 31) Mr. Mitchell stated that his medication stopped his aggression, but made him drowsy and unable to focus. (Tr. 32) Mr. Mitchell's medication use was court-ordered. (Tr. 34)

## II. Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or

combination of impairments) prevented the claimant from performing past relevant work[4]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g).

The ALJ found that Mr. Mitchell had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 13) And he found that Mr. Mitchell had two severe impairments: bipolar disorder and intermittent explosive disorder (Tr. 13) The ALJ also found, however, that Mr. Mitchell did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526). (Tr. 13-14)

The ALJ determined that Mr. Mitchell had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with nonexertional limitations to work where interpersonal contact was incidental to the work performed, complexity of tasks was learned and performed by rote, with few variables and little judgment, and supervision required was simple, direct, and concrete. (Tr. 14-17)

The ALJ determined that Mr. Mitchell's RFC would preclude performance of his past relevant work, but that Mr. Mitchell could perform jobs that existed in the national

---

[4] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy. (Tr. 17-18) Accordingly, the ALJ found that Mr. Mitchell was not disabled. (Tr. 18)

### III. Analysis

    A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

    B. *Plaintiff's Arguments for Reversal*

Mr. Mitchell claims that the ALJ's step five finding that he could perform work in the economy is not supported by substantial evidence in the record because: (1) the ALJ erred when considering the medical opinions; and (2) the ALJ's hypothetical failed to accurately describe Mr. Mitchell's limitations. (#11)

C.   *Medical Opinions*

Mr. Mitchell argues that the ALJ erred when considering the opinion of Samuel B. Hester, Ph.D. (#11, p. 10-11)  Dr. Hester saw Mr. Mitchell for a consultative mental evaluation. (Tr. 183-192)  Dr. Hester noted that Mr. Mitchell had received counseling throughout his childhood (Tr. 184) and had a history of substance abuse.  Mr. Mitchell had a bad-conduct discharge from the Marines and had been to jail six times, primarily for battery and domestic abuse.  (Tr. 185)

Dr. Hester reported that Mr. Mitchell had lost many jobs due to his anger.  (Tr. 185)  He had problems interacting with coworkers and supervisors.  (Tr. 185)  Mr. Mitchell did not have any cognitive deficiencies.  (Tr. 186-188)

Dr. Hester determined that Mr. Mitchell would not likely be able to communicate and interact in a socially acceptable matter, but still had the capacity to communicate in an intelligible and effective manner.  (Tr. 190)  Mr. Mitchell had the capacity to sustain concentration and persistence to complete talks in an acceptable time frame, unless his medical sedation slowed him too much.  (Tr. 190)  Dr. Hester assigned a Global Assessment of Functioning ("GAF") score of 52, with a past year score of 60.  (Tr. 189)

Mr. Mitchell argues that the ALJ failed to incorporate Dr. Hester's opinions in the RFC finding.  The RFC finding served as the basis for the ALJ's hypothetical to the VE.  The ALJ, however, noted and credited Dr. Hester's opinions.  (Tr. 16)  Dr. Hester's only finding that was favorable to Mr. Mitchell's claim, that Mr. Mitchell was "not likely to be

able to communicate and interact in a socially adequate manner," was part of the RFC finding.

The ALJ found that Mr. Mitchell was able to perform work where interpersonal contact was incidental and supervision was simple, direct, and concrete. (Tr. 14-15) Mr. Mitchell's ability to interact incidentally is supported by the opinions of state agency physicians, the treatment record, and Mr. Mitchell's work history. (Tr. 106, 181-182, 195-216, 222, 224-226)

Mr. Mitchell notes that the ALJ's limitation to work where "interpersonal contact is incidental to the work performed" is often used language, which is true. But incidental social contact, meaning little or by-chance social contact, limits the instances in which Mr. Mitchell would need to interact in a socially adequate manner.

The ALJ noted the opinions from Mr. Mitchell's treatment, which included GAF scores of 61, 63 and 64. (Tr. 16, 181, 224-226) As noted by the treating physicians, a GAF score of 61-70 reflects mild to moderate symptoms, but means the individual is generally functioning pretty well, with some meaningful interpersonal relationships. (Tr. 181, 224, 226) After reviewing the entire record, it is clear the ALJ adequately considered and incorporated Dr. Hester's opinions regarding Mr. Mitchell's work related limitations.

D. *The ALJ's Hypothetical*

Mr. Mitchell argues that the ALJ's hypothetical failed to account for the limitations noted by Dr. Hester and the side-effects of Mr. Mitchell's medication. As noted, the ALJ properly considered Dr. Hester's opinion. The ALJ also adequately considered the side effects of Mr. Mitchell's medication.

Mr. Mitchell alleges that his medication made him drowsy and unable to focus. The ALJ noted the allegations of drowsiness. (Tr. 14-16) The ALJ also noted that Mr. Mitchell complained to his physicians about drowsiness from his medications. (Tr. 16) The medical record, however, showed that Mr. Mitchell was consistently alert, oriented, and interactive. (Tr. 181, 182, 187, 222, 224)

The ALJ found that Mr. Mitchell had moderate difficulties in concentration and pace. (Tr. 14) Dr. Hester found that Mr. Mitchell retained the concentration and persistence to complete basic tasks. (Tr. 190) Mr. Mitchell could do work-like tasks within an acceptable time frame unless too sedated. (Tr. 190) The State agency physicians found no more than moderate difficulty in maintaining concentration, persistence, and pace. (Tr. 205, 211) Mr. Mitchell's allegations provide the only evidence in the record that would support additional limitations.

Mr. Mitchell testified that he either slept or watched television all day. (Tr. 31) Mr. Mitchell's wife stated that he played poker and listened to music on the computer

every day. (Tr. 141) He also attended Kingdom Hall two or three times a week. (Tr. 142)

Mr. Mitchell testified that he did not have a set sleep pattern or schedule and that his wife would probably have to remind him to get up and go to work. (Tr. 32) He started taking his medication about seven months prior to the hearing. (Tr. 170) The medications did not make him as drowsy as they did when he first began taking them. (Tr. 32) Despite allegations of being so drowsy that he would sleep all day, Mr. Mitchell would sometimes take a sleeping pill to sleep at night. (Tr. 33)

The ALJ credited some of Mr. Mitchell's subjective complaints, but found the side effects of Mr. Mitchell's medications did not significantly interfere with his activities of daily living. (Tr. 14-17) When making this assessment, the ALJ noted almost all of the factors relevant to credibility. See *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (objective medical evidence, prior work history, daily activities, duration, frequency, and intensity of pain, precipitating or aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions are all factors to consider when assessing the credibility of a claimant's subjective allegations). Mr. Mitchell does not challenge the ALJ's credibility assessment. (#11)

The ALJ ultimately found that Mr. Mitchell was able to perform work on a regular and continuing basis. While he certainly had limitations, the record supports a finding that Mr. Mitchell could stay awake and focus for eight hours a day, forty hours a week.

Because Mr. Mitchell could work on a regular and continuing basis, there was no need for the ALJ to question the VE regarding Mr. Mitchell's occasional drowsiness and lack of focus.

The ALJ's hypothetical captured all of the concrete consequences of Mr. Mitchell's impairments, including the side effects of his medication. Accordingly, the VE testimony constitutes substantial evidence supporting the ALJ's disability determination. *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).

## IV.   Conclusion

The Court has reviewed all of the evidence in the record, including the medical evidence, the assessment of the consulting physicians, and the hearing transcript. There is sufficient evidence in the record as a whole to support the Commissioner's determination that Billy Mitchell retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, this appeal is DENIED, and the Clerk of Court is directed to close the case, this 24th day of January, 2013.

_____
UNITED STATES MAGISTRATE JUDGE